IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTEVE OF ADAN YOMER ROLDAN LLANOS and NICOLE DIAZ, individually and as Administratrix of the ESTATE OF ADAN YOMAR ROLDAN LLANOS,  *Plaintiffs,*  v.  CITY OF PHILADELPHIA, *et al.*,  *Defendants.* | CIVIL ACTION NO. 23-3989 |

MEMORANDUM

Scott, J.                                                                                                January 14, 2025

Plaintiffs the Estate of Adan Yomar[1] Roldan Llanos and Nicole Diaz, individually and as Administratrix of the Estate of Adan Yomar Roldan Llanos (collectively, "Plaintiffs"), bring civil rights and wrongful death/survivorship claims against Defendants the City of Philadelphia, Commissioner Blanche Carney, Deputy Warden Edwin Cruz,[2] Warden Nancy Giannetta,[3] and

---

[1]   "Yomar" is spelled inconsistently throughout the Amended Complaint (ECF No. 6). *See, e.g.*, case caption (containing both "Yomar" and "Yomer"); ¶ 1 (referring to "Plaintiff Adan Yomer Roldan Llanos"), ¶ 6 (referring to "Estate of Adan Yomar Llanos"). While the correct spelling is unclear, it appears that "Yomar" is used more often by Plaintiffs and, therefore, the Court utilizes that spelling throughout this Memorandum.

[2]   Both parties have indicated that Defendant Cruz's surname is misspelled as "Cruze" in the Amended Complaint. *See* ECF Nos. 6, 22, 23.

[3]   Defendant Warden Nancy Giannetta is named in the case caption, but she is never mentioned in the body of the Amended Complaint. Thus, there are no specific allegations regarding Defendant Giannetta anywhere in the Amended Complaint, which is a basis for dismissal of Defendant Giannetta. *See Carrasquillo v. Rendell*, No. 09-cv-347, 2009 WL 1940394, at *3 (W.D. Pa. June 30, 2009) (dismissing action against defendants named only in case caption); *see also De Barros v. From You Flower, LLC*, No. CV 18-503, 2018 WL 4693957, at *2 (D.R.I. Oct. 1, 2018) (explaining "[i]n the absence of substantive allegations, all of the persons and entities who are only named in the caption are not proper parties in this case" (citations omitted)). If Plaintiffs choose to amend their complaint again, they must include specific allegations regarding Defendant Giannetta.

John Doe(s) 1–10 (collectively, "Defendants")[4] arising from the suicide of Adan Yomar Roldan Llanos ("Decedent") while he was a pretrial detainee at the Philadelphia Curran-Fromhold Correctional Facility ("CFCF"). Currently pending before this Court are Defendants the City of Philadelphia and Commissioner Blanche Carney's Motion to Dismiss (ECF No. 9), Defendant Warden Nancy Giannetta's Motion to Dismiss (ECF No. 17), and Defendant Deputy Warden Edwin Cruz's Motion to Dismiss (ECF No. 23). For the reasons that follow, the Motions will be granted. An appropriate Order will follow.

I. **FACTUAL[5] & PROCEDURAL BACKGROUND**

On July 22, 2021, while a pretrial detainee at the CFCF, Decedent asked his sister, Yoliana Roldan, to communicate with an unidentified correctional officer (hereinafter, "John Doe # 1") and to follow John Doe # 1's instructions. ECF No. 6, Am. Compl. ¶¶ 13, 16. Yoliana Roldan proceeded to speak with John Doe # 1, who instructed her to send $150 to his Cash App handle, "Scoob," so that he could purchase sneakers for Decedent. *Id.* ¶¶ 17–18. Yoliana Roldan followed this instruction and sent John Doe # 1 $150, which he used to buy sneakers for Decedent. *Id.* ¶¶ 3, 18.

Three days later, on July 25, 2021, at approximately 20:06 hours, Decedent was found by correctional officers, John Does, hanging in his cell with a shoestring around his neck. *Id.* ¶ 19. For almost two hours prior to an officer arriving at the scene, Decedent's cellmate yelled for

---

[4] Plaintiffs' case caption also includes "City of Philadelphia Department of Prisons" as a Defendant. *See generally* ECF No. 6. However, "city agencies are not 'persons' under section 1983 insofar as they do not have a separate legal existence apart from the city itself." *Mason v. Phila. Dept. of Prisons*, No. 22-3312, 2023 WL 1806813, at *6 (E.D. Pa. Feb. 7, 2024) (collecting cases). Accordingly, because the City of Philadelphia Department of Prisons is not considered a "person" for purposes of § 1983, Plaintiffs' claims against it are implausible and the Court will dismiss the claims against the City of Philadelphia Department of Prisons with prejudice.

[5] The facts are taken from the Amended Complaint (ECF No. 6) and are accepted as true in deciding the Motions.

assistance. *Id.* ¶ 20. An autopsy later determined that Decedent died from asphyxiation caused by the shoestring around his neck. *Id.* ¶ 27.

Based upon these facts, on May 23, 2023, Plaintiffs initiated this action in the Philadelphia County Court of Common Pleas. *See* ECF No. 1 at 1. Thereafter, on October 16, 2023, Defendants the City of Philadelphia and Commissioner Blanche Carney removed the action to this Court and proceeded to file a Motion to Dismiss on October 23, 2023. ECF Nos. 1, 3. In response, on December 4, 2023, Plaintiffs filed an Amended Complaint (ECF No. 6), thus rendering Defendants the City of Philadelphia and Commissioner Carney's Motion moot. ECF No. 11.

Plaintiffs' Amended Complaint contains the following five counts: (1) a § 1983 claim for violations of the Fourteenth Amendment alleging that Defendants violated their duty to protect the Decedent, a pretrial detainee, from suicide (Count I); (2) a § 1983 claim for municipal liability alleging that there were policies or customs in place that violated the Decedent's Fourteenth Amendment rights (Count II); (3) a § 1983 claim for municipal liability asserting that Defendants' failure to train employees led to Decedent's Fourteenth Amendment rights being violated (Count III); (4) a wrongful death claim (Count IV); and (5) a survival action (Count V). *See generally* Am. Compl.

On December 18, 2023, Defendants the City of Philadelphia and Commissioner Carney filed a Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 9), to which Plaintiffs filed a Response in Opposition. ECF No. 14. Thereafter, Defendant Warden Nancy Giannetta and Defendant Deputy Warden Edwin Cruz each filed Motions to Dismiss Plaintiffs' Amended Complaint (ECF Nos. 17, 23), to which Plaintiffs filed Oppositions. ECF Nos. 20, 24. Accordingly, the Motions are ripe for resolution.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility means 'more than a sheer possibility that a defendant has acted unlawfully.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

## III. DISCUSSION

Plaintiffs' Amended Complaint asserts three claims pursuant 42 U.S.C. § 1983 and two claims pursuant to state law. The Court will first address the § 1983 claims and then address Plaintiffs' state law claims.

### A. Plaintiffs' Section 1983 Claims

To state a claim under § 1983, a plaintiff must allege (1) "a deprivation of a federally protected right" and (2) that the "deprivation was committed by one acting under color of state law." *Lake v. Arnold*, 112 F.3d 683, 689 (3d Cir. 1997). Here, Plaintiffs allege that Defendants violated Decedent's Fourteenth Amendment rights by failing to prevent Decedent's suicide, and

that Defendants' policy or custom of understaffing or their failure to train led to Decedent's death. The Court will address each claim in turn.

### 1. Count I of Plaintiffs' Amended Complaint Fails to State a Claim

To adequately plead a § 1983 claim based on a pretrial detainee's suicide,[6] a plaintiff must allege facts sufficient to plausibly show: "(1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability." *Colburn v. Upper Darby Twp.* ("*Colburn II*"), 946 F.2d 1017, 1023 (3d Cir. 1991). "These three elements are conjunctive, so the absence of one is fatal to the claim." *Diorio v. Harry*, No. 21-1416, 2022 WL 3025479, at *3 (3d Cir. Aug. 1, 2022) (quoting *Colburn II*, 946 F.2d at 1026–27). Here, Plaintiffs' claim fails at the first element.

To establish a particular vulnerability to suicide, "there must be a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." *Colburn II*, 946 F.2d at 1024 (citations and internal quotations omitted). Indeed, the propensity toward suicide "must be 'so obvious that a lay person would easily recognize the necessity for' preventative action." *Id.* at 1025 (citation omitted). To demonstrate this element at the pleading stage, a plaintiff is not required to show that the suicide was "temporally imminent or somehow clinically inevitable"; rather, "[a] particular individual's vulnerability to suicide must be assessed based on the totality of the facts presented." *Palakovic v. Wetzel*, 854 F.3d 209, 230 (3d Cir. 2017). "Courts have found this threshold is met

---

[6] Although Count I of Plaintiffs' Amended Complaint is entitled "State Created Danger," Plaintiffs' responses in opposition to the pending motions indicate that they "agree with the Defense that the proper standard in analyzing a pretrial detainee suicide is" the vulnerability-to-suicide framework set forth in *Colburn v. Upper Darby Twp.* ("*Colburn II*"), 946 F.2d 1017, 1023 (3d Cir. 1991). ECF Nos. 14 at 4, 20 at 6. Given this statement by Plaintiffs, the Court will analyze this claim under the vulnerability-to-suicide framework, rather than the state-created danger theory, which is usually invoked in situations where the plaintiff (or other harmed individual) was not in the custody of or in a special relationship with the state actors. *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006).

where a decedent was at some time diagnosed with depression and suicidal tendencies, had previously attempted self-harm, had been hospitalized for psychiatric care, and recently had expressed suicidal ideation." *McCullough v. Clinton Cnty.*, No. 4:23-CV-171, 2024 WL 1468359, at *4 (M.D. Pa. Apr. 4, 2024) (citation omitted) (finding element met where detainee had documented psychiatric history, expressed thoughts about suicide along with plans to kill himself to medical professionals days before his suicide, previously attempted to kill himself while incarcerated, and was placed on behavioral watch and assigned to a cell with constant video observation because of his documented mental history); *see also Palakovic*, 854 F.3d at 229–30 (finding element met where inmate had long history of mental health issues, prior suicide attempts, told staff that he had made plans about how he would kill himself, was nicknamed "Suicide" by other prisoners, and was recognized as a "suicide behavior risk" by prison officials); *Redclift v. Schuylkill Cnty.*, No. 4:21-CV-1866, 2022 WL 3973824, at *5–6 (M.D. Pa. Aug. 31, 2022) (finding element met where complaint alleged decedent suffered from multiple mental illnesses, suicidal tendencies, had a history of past suicide attempts, and had been hospitalized for psychiatric treatment in the past).

      Here, the totality of the facts alleged in the Amended Complaint fails to support a plausible inference that there was a strong likelihood that self-inflicted harm would occur. Unlike other cases where courts have found a vulnerability to suicide had been sufficiently pled, Plaintiffs' Amended Complaint fails to allege a history of mental health issues, prior suicide attempts, prior incidents of self-harm, or recent expressions of suicidal ideation. Rather, in arguing that they have adequately alleged a particular vulnerability to suicide, Plaintiffs point to a single paragraph of their Amended Complaint which states:

> As a result of the cellmates yells for assistance for two hours, Defendants were on notice that [Decedent] needed psychological/medical attention and that he [was] vulnerable to suicide.

Am. Compl. ¶ 21. However, Plaintiffs do not allege what these cellmates were yelling. Yelling for assistance from cellmates in and of itself does not mean there is a strong likelihood that Decedent would engage in self-inflicted harm.

Taking all the facts alleged together, the Court cannot conclude, as is necessary, that the fact support a plausible inference that Decedent's vulnerability to suicide was "so obvious that a lay person would easily recognize the necessity for preventative action." *Colburn II*, 946 F.2d at 1025 (citation omitted). Therefore, Plaintiffs have failed to adequately plead the first element of their vulnerability-to-suicide claim and, accordingly, Count I of Plaintiffs' Amended Complaint fails to state a claim for which relief can be granted.

        2.     *Plaintiffs' § 1983 Municipal Liability Claims Fail*

In *Monell*, the United States Supreme Court held that "[l]ocal governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978). However, to plead such a claim, there must be "a predicate constitutional violation." *K.W. v. Se. Pennsylvania Transp. Auth.*, 760 F. App'x 104, 109 (3d Cir. 2019) (citations omitted); *see also Johnson v. City of Philadelphia*, 975 F.3d 394, 403 n.13 (3d Cir. 2020) (explaining "for *Monell* liability to attach, 'there must still be a violation of the plaintiff's constitutional rights'" (citations omitted)). Here, as discussed *supra*, Plaintiffs have not adequately alleged a constitutional violation and, therefore, Plaintiffs' municipal liability claims (Counts II, and III) fail and will be dismissed.

### B. Plaintiffs' State Law Claims

Plaintiffs also allege two state law claims: a wrongful death claim (Count IV) and a survival action (Count V). *See* Am. Compl. These Counts "are not independent, substantive causes of action." *Mohney v. Pennsylvania*, 809 F. Supp. 2d 384, 389 n.6 (W.D. Pa. 2011) (citation omitted). Thus, Counts IV and V "rise and fall with the alleged constitutional violation." *Beers v. Northumberland Cnty.*, No. 4:22-CV-01101, 2023 WL 2469905, at *6 (M.D. Pa. Mar. 10, 2023). Accordingly, as the underlying claims fail, Plaintiffs' state law claims must also be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Motions to Dismiss (ECF Nos. 9, 17, 23) will be granted and Plaintiffs' Amended Complaint will be dismissed without prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). An appropriate Order will follow.

**BY THE COURT:**

*/S/ Kai N. Scott*
**HON. KAI N. SCOTT**
**United States District Court Judge**